**Eleanor SNYDER, Executrix of the Estate of Leroy Liljedahl, Plaintiff-Appellee,**

v.

**Bruton SMITH, Defendant-Appellant.**

**No. 83–2151.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 18, 1984.

Decided June 7, 1984.

Rehearing Denied July 3, 1984.

Gaston H. Gage, Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., for defendant-appellant.

John D. Whitcher, Holmstrom & Green, P.C., Rockford, Ill., for plaintiff-appellee.

Before BAUER and FLAUM, Circuit Judges, and SWYGERT, Senior Circuit Judge.

FLAUM, Circuit Judge.

This appeal from the district court's order confirming an arbitration award challenges that order on a number of grounds. The district court had ordered the parties to arbitration in Rockford, Illinois. In that order, the court held that it had personal jurisdiction over appellant Bruton Smith. The court further held that the arbitration clause was contained in a "contract evidencing a transaction involving commerce" and thus the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–14 (1982), was applicable to the dispute. Finally, the court held that it could compel arbitration to take place in the Northern District of Illinois even though the arbitration clause specified that any arbitration was to take place in Houston, Texas. After arbitration, the court confirmed the arbitration award, and Smith appealed. For the reasons stated below, we agree with the district court's holdings regarding personal jurisdiction and the applicability of the FAA, but we reverse the court's holding that it could compel arbitration in the Northern District of Illinois.

I

Appellee Eleanor Snyder is the executrix of the estate of Leroy Liljedahl. Liljedahl and appellant Smith, together with a third individual named Robert Hitt, were partners in Viking Investment Associates (Viking). The Viking partnership is limited to the ownership of certain property located in Harris County, Texas, and to any property purchased by the partnership within one mile of that property.

The partnership agreement was executed in September 1971. At that time, all three partners were Illinois residents.[1] The partnership mailing address was in Rockford, Illinois. For a period of time, Smith conducted the partnership's business from an office in Rockford.[2] The partnership borrowed money from and maintained a checking account with a bank in Rockford.

The partnership agreement provides that the death of a partner does not terminate the partnership but vests the surviving partners with the right to purchase the interest of the deceased partner. The agreement further provides that if the surviving partners or partner exercise the option to purchase, the parties are to attempt to agree on a purchase price; if the parties fail to agree on a price, the price shall be determined by arbitration. The partnership agreement states in pertinent part:

Any controversy or claim arising out of or relating to this agreement, or to the interpretation, breach or enforcement thereof, shall be submitted to three arbitrators and settled by arbitration in the City of Houston, Texas, ... provided, however, ... if the matter submitted to arbitration shall involve a [dispute] as to the [purchase price] of a deceased, ... Partner's Entire Partnership Interest, such arbitration shall be held before three arbitrators, one of whom shall be a certified public accountant and the other two of whom shall be licensed real estate appraisers maintaining offices and doing business in Harris County, Texas.... Any award made by any majority of the Arbitrators shall be final, binding, and

---

1. Smith is now a resident of North Carolina and was served with process by a federal marshal in North Carolina.

2. The office, however, was Smith's, not the partnership's. Magistrate's Report and Recommendation at 7.

conclusive on all parties hereto for all purposes, and a judgment may be enforced thereon in any court having jurisdiction thereof.

Viking Partnership Agreement, Article VII.

Liljedahl died on December 9, 1976. On January 31, 1977, Smith notified Snyder by letter that he elected to purchase Liljedahl's entire interest.[3] At that time, Smith was a resident of Illinois and the letter bore a return address in Rockford, Illinois. At some time after January 1977, Smith became a resident of North Carolina.

The parties were unable to agree on a purchase price. Smith returned to Illinois several times to negotiate the price. On July 15, 1980, Snyder served Smith with written demand for arbitration. On July 28, Smith notified the American Arbitration Association that he refused to participate in the arbitration. On that date, Smith also filed suit in a Texas state court, requesting the court to establish a purchase price for the partnership interest and alleging a cause of action for breach of contract. Snyder removed the case to federal district court in Texas. On August 4, 1980, Snyder filed a petition to compel arbitration in the district court for the Northern District of Illinois under section 4 of the FAA, 9 U.S.C. § 4 (1982). Smith moved to dismiss the Illinois action for improper service of process and lack of personal jurisdiction. The matter was referred to a magistrate, who recommended that the court deny the motion to dismiss. On March 3, 1981, the court denied the motion. Smith subsequently submitted to the court a memorandum arguing that arbitration under the agreement could not take place in Illinois.

The district court in Texas, pursuant to agreement of the parties, entered an order staying its proceedings pending resolution of the Illinois action. On September 1, 1981, the district court in Illinois ordered the parties to arbitrate in Rockford, Illinois. Smith did not appeal that order.

On October 15, 1982, the arbitration panel awarded Snyder the sum of $549,755.00 plus administrative fees. Snyder applied to the district court in Illinois for an order confirming the arbitration award; Smith moved to vacate or modify the award. The court confirmed the arbitration award and entered judgment against Smith. Smith appealed.

On appeal, Smith raises four issues. First, Smith argues that the district court lacked personal jurisdiction over him. He contends that his casual and sporadic activities in Illinois are insufficient to meet the "transaction of business test" of the Illinois long-arm statute and that the cause of action did not "arise from" any transaction of business of his in Illinois. Second, he argues that the FAA is not applicable because the partnership agreement was not a "contract evidencing a transaction involving commerce" as required by 9 U.S.C. § 2 (1982). Smith maintains that the agreement itself must evidence interstate commerce, that "involving commerce" is a much narrower test than "affecting commerce," and that any casual and sporadic interstate activities in which the partnership engaged are not sufficient to meet the statutory standard for application of the FAA. Third, Smith argues that the district court lacked the power to compel arbitration in the Northern District of Illinois because the arbitration agreement provided that arbitration was to take place in Houston, Texas; Section 4 of the FAA provides that the court shall order the parties to arbitrate "in accordance with the terms of the agreement." Finally, Smith argues that the order of confirmation and judgment violates article III of the Constitution.

Snyder argues that the district court correctly compelled arbitration and confirmed the award. First, Snyder contends that the district court's exercise of personal jurisdiction over Smith satisfies both the requirements of due process and the standards of the Illinois long-arm statute. She argues that the "arising from" requirement is broadly construed, and as such, this cause

---

**3.** The other partner, Hitt, elected not to exercise his option to purchase.

of action arises from Smith's transaction of business in Illinois. Second, she argues that the FAA is applicable because the "involving commerce" requirement must be construed broadly and that the facts support a finding that interstate commerce is involved. Third, Snyder asserts that the district court could compel arbitration in the Northern District of Illinois because the only statutory requirement is that the district court have subject matter jurisdiction over the controversy, which it had here. According to Snyder, any valid objection Smith could have would be as to venue, and Smith has waived any venue objection through failure to comply with rule 12(g) & (h) of the Federal Rules of Civil Procedure. Finally, Snyder argues that Smith did not raise his constitutional objections below and that in any event the district court's order did not violate article III.

## II

We first must determine whether we have jurisdiction to examine the merits of the issues raised. At oral argument, counsel for Snyder requested this court to dismiss the appeal on the basis of the decision in *University Life Insurance Co. of America v. Unimarc Ltd.*, 699 F.2d 846 (7th Cir.1983), which held that an order compelling arbitration is final and appealable under section 1291 even though the district court retains jurisdiction solely for the purposes of resolving further disputes over arbitrability and enforcing any arbitration award. *Id.* at 849. Smith did not appeal from the order compelling arbitration. Snyder argues that the time for appeal from that order has expired, *see* Fed.R. App.P. 4(a), and thus this court lacks jurisdiction to review any issues decided in that order. *See Northcross v. Board of Education*, 611 F.2d 624, 635 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).

■ In this case, the district court compelled arbitration, in a proceeding where the only judicial remedy sought was an order to arbitrate, and it retained jurisdiction to enforce any arbitration award. Thus, it is clear that the order compelling arbitration was final and appealable when entered according to this court's decision in *University Life Insurance.* That case, however, was decided in January 1983; the order to compel arbitration in this case was issued in September 1981. We conclude, for the reasons below, tht we will not apply the decision in *University Life Insurance* retroactively.

■ Whether to apply a decision retroactively depends on a number of factors: the prior history of the rule in question, that is, whether the new rule overrules past precedent or decides an issue of first impression; whether retroactivity will further or retard the rule's operation; and the inequity imposed by retroactive application. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971); *cf. Solem v. Stumes*, —— U.S. ——, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984). Prior to *University Life Insurance*, this court had not squarely held that such an order was final and appealable. Indeed, this court had stressed a strong policy against encouraging such piecemeal appeals. *See, e.g., Whyte v. THinc Consulting Group International*, 659 F.2d 817, 818 n. 2 (7th Cir. 1981). When the district court ordered arbitration, in September 1981, responsible counsel would have believed that the order was interlocutory. The area of appealability of arbitration orders is one of "medieval if not Byzantine pecularities," *New England Power Co. v. Asiatic Petroleum Corp.*, 456 F.2d 183, 189 (1st Cir.1972), and a "source of understandable confusion to the bar," *Timberlake v. Oppenheimer & Co.*, 729 F.2d 515, 517 (7th Cir.1984), where the law is constantly changing.[4] In such an area of law, counsel cannot be expected

---

4. *Compare, e.g., Timberlake v. Oppenheimer & Co.*, 729 F.2d 515 (7th Cir.1984) (order refusing stay of arbitration not appealable under § 1292(a)(1)) *with Whyte v. THinc Consulting Group Intern.*, 659 F.2d 817 (7th Cir.1981) (or-

der granting stay of arbitration appealable) *with Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638 (7th Cir.1981) (denial of stay pending arbitration appealable under § 1292(a)(1)).

to anticipate the twists and turns that the law may take. The effect of applying the decision in *University Life Insurance* retroactively here would be to deprive the appellant of any opportunity to present his claims to this court for review. This obviously unfair result leads us to conclude that we will not dismiss the appeal for lack of jurisdiction. *See de Mouy v. Ingvoldstad,* 664 F.2d 21, 23 n. 2 (2d Cir.1981) (Adams, J., concurring) ("[i]n such a situation, it would be inequitable for an appellate court to decline to hear the appeal"). *See also West v. Keve,* 721 F.2d 91 (3d Cir.1983).

The Supreme Court, in *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981), held, "A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." In that case, the court of appeals held that an order denying a motion to disqualify counsel was not appealable prior to final judgment but, because its holding was contrary to precedent, it determined the merits of the order. The Supreme Court held that when an appellate court finds an order interlocutory and nonappealable, the court must dismiss the appeal. The Court did not address the issue of whether an appellate court must dismiss the appeal where a party who relies on a jurisdictional ruling is, under a subsequent decision, foreclosed from ever raising his issues in the appellate court. Thus, *Firestone* does not require this court to dismiss this appeal.

### III

 We turn to the issue of whether the district court had personal jurisdiction over Smith. A federal district court has personal jurisdiction over a party in a diversity suit only if a court of the state in which the district court sits would have

such jurisdiction. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1212 (7th Cir.1984). In Illinois, a nonresident party can be sued if it performs one of the acts enumerated in the Illinois long-arm statute or if it is doing business in Illinois, as long as the due process "minimum contacts" requirement is met. *Id.; see International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). There is no claim that Smith is doing business in Illinois, and thus we limit our inquiry to the long-arm statute.

 The constitutional due process requirement is satisfied by "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). In cases such as this, where the claim is that a controversy "arises from" the defendant's contacts with the forum, the " 'relationship among the defendant, the forum and the litigation' is the essential foundation" of personal jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* — U.S. —, —, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)).[5] Recent cases have emphasized the reasonableness of subjecting a defendant to suit. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d at 1213; *Honeywell, Inc. v. Metz Apparatewerk,* 509 F.2d 1137 (7th Cir.1975). Several factors are relevant to an assessment of reasonableness: the defendant's physical presence in the forum state while transacting business, *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d at 1214; and the foreseeability that the defendant would be subject to suit in the forum, *id.* at 1212 n. 4; *see World-Wide Volkswagen Corp. v.*

---

**5.** In *Helicopteros Nacionales de Columbia, S.A. v. Hall,* — U.S. —, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the Supreme Court addressed the minimum contacts necessary for personal jurisdiction in suits not "arising out of" or "related

to" the defendant's contacts with the forum. The Court did not discuss the minimum contacts necessary where, as here, the suit "arises out of" the defendant's contacts with the forum.

*Woodsen,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Illinois has imposed additional personal jurisdiction requirements through its long-arm statute. This statute provides that a person submits itself to the jurisdiction of Illinois courts if it "engages in the transaction of any business" within Illinois and if the cause of action "arises from" this transaction.[6] The question of personal jurisdiction under the Illinois statute is separate from the question of the requirements of due process. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d at 1213; *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 197, 57 Ill.Dec. 730, 733, 429 N.E.2d 847, 850 (1981) (boundaries of Illinois statute are not to be equated with the test under the due process clause). Illinois cases establish that, to qualify as a transaction of business that establishes jurisdiction under the long-arm statute, an act by the nonresident defendant must give rise to the plaintiff's cause of action; in other words, the plaintiff's claim must "lie[ ] in the wake of the commercial activities by which [the] defendant submitted to the jurisdiction of Illinois courts." *Loggans v. Jewish Community Center,* 113 Ill.App.3d 549, 557, 69 Ill.Dec. 484, 490, 447 N.E.2d 919, 925 (1983); *see also Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d at 1215; *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d at 198–99, 57 Ill.Dec. at 734, 429 N.E.2d at 851. The "transaction of business" standard does not require that the nonresident defendant conduct business within Illinois regularly or systematically; a single act may be sufficient, as long as the cause of action arises from that act. *Johnston v. United Presbyterian Church,* 103 Ill.App.3d 869, 874, 59

Ill.Dec. 518, 522, 431 N.E.2d 1275, 1279 (1981).

Turning to the facts of this case, we hold that Smith's activities in Illinois are sufficient to qualify as a transaction of business that establishes jurisdiction under the long-arm statute. While he was an Illinois resident, Smith mailed a letter to Snyder, notifying her that he was exercising his option to purchase Liljedahl's share of the partnership. Smith also came to Illinois and negotiated with Snyder over the purchase price for the partnership interest. These activities constitute the transaction of business. Snyder's claim for arbitration over the purchase price arises from the letter and the failed negotiations; the claim "lies in the wake" of Smith's actions while in Illinois. Thus, we hold that the district court had jurisdiction over Smith under the Illinois long-arm statute.

We further hold that the exercise of jurisdiction here comports with the "minimum contacts" requirement of the due process clause. Smith's sending a letter, while a resident of Illinois, to another Illinois resident, exercising an option to purchase, and returning to Illinois to negotiate the price, makes it reasonable for an Illinois court to exercise jurisdiction. By taking these actions in Illinois, Smith chose to invoke the benefits and protections of Illinois law. His connections with Illinois, particularly transacting business while present within the state, are such that he should have anticipated that he could be sued there. His physical presence in Illinois while taking these actions gives Illinois an interest in adjudicating this dispute. Any inconvenience to Smith in conducting the suit in Illinois, although perhaps not minimal, is not seriously greater than it

**6.** The statute provides in pertinent part:

Acts submitting to jurisdiction—Process.

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;

\* \* \* \* \* \*

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this Section.

Ill.Rev.Stat. ch. 110, § 2–209(a)(1), (c) (1983) (formerly codified at Ill.Rev.Stat. ch. 110, § 17).

would be if the suit were conducted in Texas. Thus, the relationship between this defendant, this forum, and this litigation is such that the requirements of the due process clause are met.

## IV

We turn next to the question of whether the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982), is applicable to this dispute. The FAA makes enforceable only those arbitration agreements "in any maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (1982). There is no maritime transaction involved here, and thus we must decide whether the partnership agreement evidences a transaction involving commerce. The requirement that transactions involving interstate commerce be "evidenced by" the contract does not limit a court to considering only those transactions expressly authorized on the face of the contract in determining whether the FAA applies. In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 401 n. 6, 87 S.Ct. 1801, 1804 n. 6, 18 L.Ed.2d 1270 (1967), the Supreme Court relied on an affidavit submitted to the district court in concluding that interstate commerce was involved. Thus, in this case, we may look to the partnership agreement and affidavits to determine whether there is a transaction involving interstate commerce.

The Supreme Court has stated that "[s]ection 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). For that reason, courts have declared a strong policy favoring the arbitration of contract disputes. *See, e.g., id.; Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co.*, 643 F.2d 863, 867 (1st Cir.1981). For example, any questions as to whether an issue is arbitrable are to be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 103 S.Ct.

at 941; *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 643 (7th Cir.1981). Similarly, because of the strong policy favoring arbitration, the requirement of "evidencing a transaction involving commerce" must be construed broadly. *See Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co.*, 643 F.2d at 867.

A broad interpretation of the "involving commerce" requirement is supported by several decisions. In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967), the Court refused to limit the applicability of the FAA to contracts for the interstate shipment of goods. The Court quoted from the House Report accompanying the FAA: " '[t]he control over interstate commerce [one of the bases for the legislation] reaches not only the actual physical interstate shipment of goods but also contracts *relating* to interstate commerce.' " *Id.* (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. 1 (1924) (emphasis supplied)). In *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 200–01, 76 S.Ct. 273, 274–75, 100 L.Ed. 199 (1956), the Court stated that the contract did not involve commerce because there was no showing that the petitioner was working in commerce, producing goods for commerce, or engaging in activity that affected commerce. *See also Grand Bahama Petroleum Co. v. Asiatic Petroleum*, 550 F.2d 1320, 1324 (2d Cir.1977).

The Supreme Court has recently discussed the purpose of the "involving commerce" requirement in deciding whether the FAA applies in state courts. The Court stated:

> We would expect that if Congress, in enacting the Arbitration Act, was creating what it thought to be a procedural rule applicable only in federal courts, it would not so limit the Act to transactions involving commerce. On the other hand, Congress would need to call on the Commerce Clause if it intended the Act to apply in state courts. Yet at the same time, its reach would be limited to trans-

actions involving interstate commerce. We therefore view the "involving commerce" requirement in § 2, not as an inexplicable limitation on the power of federal courts, but as a necessary qualification on a statute intended to apply in state and federal courts.

*Southland Corp. v. Keating,* —— U.S. ——, ——, 104 S.Ct. 852, 860, 79 L.Ed.2d 1 (1984). Thus, the Court equated the breadth of "involving commerce" with the extent of Congress's power to regulate under the commerce clause. Under the commerce clause, Congress may reach activities "affecting" interstate commerce. *See, e.g., Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 276–77, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981). That the requirement that an arbitration agreement involve commerce is not a limitation but a qualification suggests that Congress intended the FAA to apply to all contracts that it constitutionally could regulate.

■■■ Thus, it is clear that the "involving commerce" language must be construed very broadly. We need not decide today whether Congress intended the FAA to apply to all contracts affecting interstate commerce, for it is clear that the partnership agreement presented in this case falls well within the constitutional limits. The real estate at issue was located in Texas; the partners lived in, and the partnership was managed from, Illinois. The partnership borrowed money from and maintained a checking account with a bank in Illinois. Thus, the partnership agreement involved interstate commerce and the FAA is applicable.

V

■■■ We turn finally to the question of whether, under section 4 of the FAA, the district court for the Northern District of Illinois could compel arbitration to take place in that district when the partnership agreement provides that arbitration is to take place in Houston, Texas. Section 4 provides in pertinent part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . [T]he court shall make an order directing the parties to proceed to arbitration in accordance with terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

Under the statute, a district court has no power to order arbitration to take place outside of its own district. *Econo-Car International, Inc. v. Antilles Car Rentals, Inc.,* 499 F.2d 1391 (3d Cir.1974); *see also Couleur International Ltd. v. Saint-Tropez West,* 547 F.Supp. 176 (S.D.N.Y.1982). Yet under the statute, the court must order the parties to arbitrate "in accordance with the terms of the agreement"; one term of the agreement is the parties' forum selection clause.[7]

---

**7.** Several other circuits have considered this dilemma, although none has considered it in the procedural posture that is presented here. In *Continental Grain Co. v. Dant & Russell,* 118 F.2d 967 (9th Cir.1941), the court held that a district court in Oregon could compel arbitration in its district despite the fact that the arbitration agreement provided that arbitration was to take place in New York. However, in that case, the party challenging the district court's order had itself brought the action to compel arbitration in Oregon. In *Hilti, Inc. v. Oldach,* 392 F.2d 368 (1st Cir.1968), the court held that

the district court in Puerto Rico could stay its proceedings pending arbitration in Connecticut that was pursuant to the parties' agreement. However, that case involved a motion to stay arbitration and not a petition to compel arbitration. In *Econo-Car International, Inc. v. Antilles Car Rentals, Inc.,* 499 F.2d 1391 (3rd Cir.1974), the court held that the district court in the Virgin Islands could not compel arbitration in New York City even though the parties' agreement provided for arbitration in New York City. The court did not decide whether the district

We first must determine whether Smith's failure specifically to raise the forum selection clause as improper venue in his rule 12(b) motion to dismiss means that he waived the defense. Rule 12(g) provides that if a party makes a motion under rule 12(b) and fails to raise improper venue, he waives the defense. Some courts have considered forum selection clauses to be a type of venue provision. *See, e.g., Bense v. Interstate Battery System*, 683 F.2d 718, 720–22 (2d Cir.1982); *In re Fireman's Fund Insurance Co.*, 588 F.2d 93 (5th Cir.1979); *Aaacon Auto Transport v. State Farm Mutual Automobile Insurance Co.*, 537 F.2d 648 (2d Cir.1976), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977); *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757 (3d Cir.1973). We need not decide whether a forum selection clause constitutes "venue" within the meaning of rule 12, for we find that Smith sufficiently raised his defense based on the clause in his rule 12 motion. In that motion, Smith labelled his grounds to dismiss as lack of proper service of process and lack of personal jurisdiction. In his discussion of personal jurisdiction, Smith clearly laid out his argument that any arbitration could only take place in Texas because of the forum selection clause. This was sufficient to alert the district court that Smith was arguing that a district court in the Northern District of Illinois could not enter an order to compel arbitration. The fact that Smith did not label his defense as one of venue does not matter. The Federal Rules are to be construed liberally so that erroneous nomenclature in a motion does not bind a party at his peril. *Sacks v. Reynolds Securities, Inc.*, 593 F.2d 1234, 1239 (D.C.Cir.1978); *Monte Vista Lodge v. Guardian Life Insurance Co. of America*, 384 F.2d 126 (9th Cir.1967), *cert. denied*, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1142 (1965). Thus, Smith did not waive any objections on grounds of improper venue.

court could order arbitration in the Virgin Islands. In *DuPuy-Busching General Agency v. Ambassador Insurance Co.*, 524 F.2d 1275 (5th Cir.1975), the court held that where the party seeking to avoid arbitration brought suit in a

The purpose of the FAA is to make arbitration agreements valid and enforceable. *Southland Corp. v. Keating*, 104 S.Ct. at 858–60. The right and duty to arbitrate disputes is purely a matter of contractual agreement between the parties. This court has emphasized the "voluntary nature" of commercial arbitration. *Merit Insurance Co. v. Leatherby Insurance Co.*, 714 F.2d 673, 678 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983). An arbitration agreement, including its forum selection clause, is a freely-negotiated contract between the parties.

Courts must give effect to such freely-negotiated forum selection clauses. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15–19, 92 S.Ct. 1907, 1916–18, 32 L.Ed.2d 513 (1972). "The choice of [ ] forum was made in an arms-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *Id.* at 12, 92 S.Ct. at 1914. *See also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519–20, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974) (holding enforceable forum selection clauses in arbitration agreements); *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 680–81 (5th Cir.1976).

Snyder has not argued that there is any "compelling or countervailing" reason that the forum selection clause here should not be enforced, other than that she filed suit in the Northern District of Illinois and that court could compel arbitration only in its own district. We do not find this reason to be sufficient to override the parties' freely-negotiated agreement. Moreover, if Snyder were to prevail here, any party to an arbitration agreement could avoid the effect of the agreed-to forum merely by filing suit in a different district. This in turn could lead to the

forum other than the one provided for in the contract, the other party had to file its motion to compel in that forum and that district court could compel arbitration.

parties racing to different courthouses to obtain what each thinks is the most convenient forum for it, in disregard of its contractual obligations. This disregard is not what Congress intended when it enacted a statute to make arbitration agreements enforceable. Thus, the district court in this case had no power under the statute to order arbitration in its district in contravention of the parties' agreement. *See Netherlands Curacao Co. v. Kenton Corp.*, 366 F.Supp. 744, 745–46 (S.D.N.Y.1973) (party cannot move district court to compel arbitration where place for arbitration not within district); *Lawn v. Franklin*, 328 F.Supp. 791, 793 (S.D.N.Y.1971) (proper district for filing motion to compel is district where contract provides proceedings are to take place).

■ The district court in this case, under the FAA, could not order arbitration in the Northern District of Illinois. The district court, under the FAA, also could not order arbitration in Houston, Texas. In a case such as this, where the petition to compel arbitration was the only relief sought, the district court should dismiss the petition or, upon motion, stay its proceedings.[8]

### VI

Because the district court improperly compelled arbitration in the Northern District of Illinois, we reverse its order compelling arbitration and the further order confirming the award with directions to the district court to vacate its orders and judgment and dismiss the case.

BAUER, Circuit Judge, dissenting in part.

Although I agree with most of the majority's well-written opinion, I am convinced that the district court properly compelled arbitration in the Northern District of Illinois. Section 4 extends the power to compel arbitration to *"any* United States district court which, save for such agreement, would have jurisdiction under Title 28." 9 U.S.C. § 4 (1982) (emphasis added). The phrase "save for such agreement" apparently means "in the absence of the arbitration agreement." *See Couleur International Ltd. v. Saint-Tropez West*, 547 F.Supp. 176, 177 (S.D.N.Y.1982); *Warren Brothers Co. v. Community Building Corp. of Atlanta, Inc.*, 386 F.Supp. 656, 665 (M.D.N.C.1974). Here, the diversity of citizenship between the parties and the amount in controversy would vest the district court with subject matter jurisdiction in the absence of the parties' agreement to arbitrate. Because the district court also had personal jurisdiction over the defendant, Section 4 seems to give the court the power to compel arbitration here. The majority, however, finds a conflict between Section 4's requirement that the district court compel arbitration only in its own district, and the Section's mandate that the parties arbitrate according to "the terms of the agreement." Because the agreement here specified that the arbitration must occur in Houston, Texas, the majority holds that the district court could compel arbitration neither in its own district nor in any other district.

The provisions of Section 4 are inconsistent only if the parties' forum selection clause is a "term of the agreement." Under the majority's interpretation, the broad power conferred on the district courts in Section 4 is completely negated whenever an arbitration agreement includes such a forum selection clause. The frustrating results of this interpretation are apparent in the instant case, where the majority concludes that the district court is powerless to compel arbitration, even though the court meets the Section 4 jurisdictional requirement. Courts generally give effect to forum selection clauses, but such provisions need not be honored in the face of "some compelling and countervailing reason." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32

---

**8.** We do not reach the question of whether a district court may order arbitration in its own district in contravention of the forum selection clause where all parties waive the benefit of the clause.

L.Ed.2d 513 (1972). The interest in honoring the choice of forum here is outweighed by the need to give full effect both to the jurisdiction conferred under Section 4 and to the policy favoring arbitration that underlies the Federal Arbitration Act. Although I appreciate the majority's concern that this interpretation might lead to forum shopping, it is important to remember that a district court may act under Section 4 only if it would have jurisdiction in the absence of the arbitration agreement and venue would be proper. Accordingly, I would affirm the district court's order in its entirety.