**Paul D. ZDEB, Plaintiff,**

v.

**SHEARSON LEHMAN BROTHERS and Michael G. O'Dair, Defendants.**

**Civ. A. 87–C–1201.**

United States District Court,
D. Colorado.

Dec. 7, 1987.

Kirk S. Samelson, Colorado Springs, Colo., for plaintiff.

John M. Husband, Denver, Colo., for defendants.

### ORDER

CARRIGAN, District Judge.

Plaintiff Paul D. Zdeb commenced this action by filing a complaint against the defendants Shearson Lehman Brothers ("Shearson") and Michael D. O'Dair, alleging these claims for relief: (1) violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623; (2) breach of contract; (3) failure to pay severance pay; (4) conversion; (5) intentional interference with contractual relations; (6) violation of the implied covenant of good faith and fair dealing; (7) wilful violation of the ADEA; and (8) outrageous conduct. Plaintiff was

employed by the defendant Shearson as a financial consultant from 1981 until his termination in 1986. Defendant O'Dair is an employee of Shearson.

Defendants Shearson and O'Dair contend that all of the plaintiff's claims for relief are attributable to the plaintiff's termination by Shearson, and they have moved under the Federal Arbitration Act (the "FAA" or the "Act"), 9 U.S.C. §§ 1–14, to compel arbitration of the plaintiff's second, third, fourth, fifth, sixth, and eighth claims for relief. All of those claims are governed by state law. An answer in response to the two ADEA claims has been filed by the defendants in a separate proceeding.

In response, the plaintiff argues that arbitration is not mandated because: (1) he did not enter into an agreement to arbitrate; and (2) even if he had agreed to arbitrate certain disputes, his three tort claims are not covered by that agreement. The issues have been fully briefed and oral argument would not assist my decision.

The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed. 158 (1985); 9 U.S.C. §§ 3–4. Thus "agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement." *Id.*

The relevant issues are: (1) whether there exists a valid agreement to arbitrate; and (2) if so, whether the subject matter of the plaintiff's dispute with the defendants is covered by the agreement. *See Merrill Lynch, Pierce, Fenner & Smith v. Hovey*, 726 F.2d 1286, 1288 (8th Cir.1984).

### 1. *Existence of an Agreement to Arbitrate.*

The threshold inquiry in resolving a motion to compel arbitration is whether there exists a valid enforceable agreement to arbitrate. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Defendants contend that arbitration of the plaintiff's claims is required under New York Stock Exchange ("NYSE") Rule 347.[1] That rule provides:

"Any controversy between a registered representative and any member or member organization *arising out of the employment or termination of employment* of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure described elsewhere in these rules." (Emphasis added.)

Plaintiff insists that Rule 347 alone is insufficient to compel arbitration because he never entered into a written agreement with the defendants to be bound by Rule 347. He argues that "[c]ontrary to [the defendants'] statements, New York Exchange Rule 347 by itself is not a valid written agreement which would compel ar-

---

1. Defendants also contend that the plaintiff is required to arbitrate his state law claims because of Article XI of the NYSE Constitution. That provision states that "[a]ny controversy between parties who are members, allied members, or member organizations ... shall at the instance of any such party be submitted for arbitration...." (Defendants' brief, at 3.)

Additionally, the defendants argue that the plaintiff is bound to arbitrate his state law claims because he signed Form U–4, the "Uni-

form Application for Securities Industries Registration." Yet Form U–4 only requires the plaintiff to be bound by the arbitration provisions of states in which the plaintiff had registered "as indicated in question 8." (Plaintiff's objection, at 2). According to question 8 of the form, the plaintiff had only registered with Nebraska. Thus Form U–4 does not bind the plaintiff to the arbitration provisions of the NYSE Constitution or Rules.

bitration in the instant case." (Plaintiff's response to the defendants' reply, at 1.)

■ I disagree with this contention. In *Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank*, 728 F.2d 577, 580 (2d Cir.1984), the defendants were attempting to compel the plaintiff to submit to arbitration. Defendants made no claim that they had an agreement with the plaintiff requiring the submission to arbitration of any disputes with the plaintiff. Rather, they argued that the constitution and the rules of the NYSE required arbitration. The district court denied the defendants' request on the ground that the parties had not indicated an intention to be bound by the NYSE arbitration provisions.

Although the Second Circuit in *Paine, Webber* affirmed on other grounds the lower court's decision against the defendants, it stated:

> "While we agree with the result reached by the district court, we do not subscribe to its analysis. In particular, we believe that the arbitration provisions of the NYSE constitution and Rules are sufficient in and of themselves to compel arbitration of covered disputes under § 3, whether or not they are incorporated in a purchase and sale agreement." *Id.* at 580.

True, the quoted statement is a dictum. Nevertheless, I am persuaded by the soundness of the Second Circuit's reasoning that requiring parties to expressly agree to be bound by Rule 347 would "contravene the strong policy favoring arbitration." *Id.* *See Hovey, supra,* 726 F.2d at 1288 (Rule 347 constitutes a valid agreement to arbitrate that is governed by the FAA); *Manes Org., Inc. v. Standard Dyeing and Finishing Co.,* 472 F.Supp. 687 (S.D.N.Y.1979) (an arbitration agreement or clause need not be signed or subscribed to by the parties).

■ Plaintiff argues that even if he is bound by Rule 347, the arbitration provision of Rule 347 does not apply to his relationship with the defendant O'Dair. Yet Rule 347 appears to cover the plaintiff's relationship with both Shearson and O'Dair. Rule 347 authorizes arbitration for controversies between a registered representative and any NYSE member or member organization.

According to the defendants: (1) the plaintiff is a registered representative and a member of the NYSE under NYSE Rule 10 and the NYSE Constitution, Art. I, § 3(h) (*See* Defendants' Exhibits C and D; affidavit of the defendant O'Dair); (2) Shearson is a member organization under the NYSE Constitution, Art. I, § 3(i); and (3) the defendant O'Dair is a registered representative and member of the NYSE under NYSE Rule 10 and the NYSE Constitution Art. I, § h. Thus Plaintiff's dispute with Shearson qualifies as a controversy between a "registered representative" (the plaintiff) and a "member organization" (Shearson). Similarly, the plaintiff's dispute with O'Dair constitutes a controversy between a "registered representative" (the plaintiff) and a "member" (O'Dair"). All three parties to this action are therefore subject to Rule 347.

## 2. *Whether the Plaintiff's Tort Claims are Covered under the Arbitration Agreement.*

The issue here is whether Rule 347 can be used to compel arbitration of the plaintiff's tort claims for conversion, interference with contractual relations, and outrageous conduct. As noted above, Rule 347 provides for arbitration of a controversy "arising out of the employment or termination of employment." Defendants insist that the plaintiff's tort claims are covered by Rule 347 because they all arise directly out of the termination of the plaintiff's employment with Shearson.

The scope of an arbitration agreement is to be interpreted liberally and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, n. 27, 103 S.Ct. 927, n. 27, 74 L.Ed.2d 765 (1983); *Hovey,* 726 F.2d at 1289. *See Shearson/American Express, Inc. v. McMahon,* — U.S. ——, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (the FAA establishes a federal policy favoring arbitration); *Snyder v. Smith,* 736 F.2d 409 (7th Cir.1984),

*cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984) (any questions as to whether an issue is arbitrable are to be resolved in favor of arbitration).

"[T]he plain language of Rule 347 does not limit arbitration to contractual disputes." *Morgan v. Smith Barney, Harris Upham & Co.,* 729 F.2d 1163, 1167 (8th Cir.1984). In *Morgan,* the court held that Rule 347 required arbitration of a former employee's claims alleging that his employers "scrounged up" complaints from his former customers and communicated them to securities enforcement agencies, and that personnel at his former employer had deliberately misinformed customers that his broker's license had been suspended. The court stated:

> "[T]he language 'arising out of' contained in Rule 347 requires arbitration of tort as well as contract claims which involve significant aspects of the employment relationship including but not limited to explicit contractual terms." *Id.* at 1167.

■ Moreover, arbitration provisions may apply to tortious acts committed subsequent to the employment relationship. *See Aspero v. Shearson American Express, Inc.,* 768 F.2d 106 (6th Cir.1985), *cert. denied,* 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985) (Rule 347 authorized arbitration of claims for defamation, invasion of privacy, and intentional infliction of emotional distress that arose after the plaintiff's employment with the defendant had been terminated); *Hovey, supra,* 726 F.2d at 1291 (claim that former brokerage firm employees used firm's records and solicited firm's clients "arose out of the employment," and was therefore subject to arbitration under Rule 347); *but see Coudert v. Paine Webber Jackson & Curtis,* 705 F.2d 78 (2d Cir.1983) (Rule 347 not applicable to employee's grievance arising after termination of agreement to arbitrate).

In support of his argument that his tort claims are not covered by Rule 347, the plaintiff relies on *Armada Coal Export, Inc. v. Interbulk, Ltd.,* 726 F.2d 1566 (11th Cir.1984). There, the court ruled that an arbitration clause in a boat charter agreement did not cover claims for unlawful attachment and conversion. Notably, however, the court in *Armada Coal* was not construing Rule 347.

■ An examination of the complaint reveals that the plaintiff's tort claims arise out of the plaintiff's termination of employment with Shearson, and are therefore covered by Rule 347. Paragraph 25 alleges that *upon termination of the plaintiff's employment with Shearson,* O'Dair took over management of the plaintiff's equity management accounts and collected commissions on those accounts. According to paragraph 26, "[b]y his actions, O'Dair has converted the commissions *that would have been payable to [the plaintiff]* from the equity management accounts." (Emphasis added.)

Similarly, paragraph 29 asserts that O'Dair's actions in converting the plaintiff's equity management accounts and *in terminating the plaintiff's employment,* constituted "interference with [the plaintiff's] former clients and with Shearson Lehman Brothers." (Emphasis added.) Furthermore, paragraph 30 alleges that as a result of O'Dair's actions, the plaintiff has "lost income, commissions, and benefits he would have earned *had he stayed employed with Shearson.*" (Emphasis added.) Finally, paragraph 38 claims that the actions of Shearson and O'Dair constituted outrageous conduct.

Thus, the plaintiff's tort claims against the defendants essentially allege that: (1) O'Dair converted money from commissions that the plaintiff would have received had he not been fired; (2) O'Dair interfered with the plaintiff's relationship with his former clients and Shearson by "terminating the plaintiff's employment;" (3) O'Dair's actions have caused the plaintiff to lose money that he would have earned "had he stayed employed with Shearson;" and (4) Shearson and O'Dair's conduct surrounding the plaintiff's dismissal was "outrageous." Clearly, these allegations arise out of the termination of the plaintiff's employment with Shearson, and are there-

fore covered by the plain language of Rule 347.

Accordingly, IT IS ORDERED that the defendants' motion to compel arbitration of the plaintiff's second, third, fourth, fifth, sixth, and eighth claims for relief is granted.