WEATHERLY CELLAPHONICS PARTNERS, Plaintiff,

v.

Eldon L. HUEBER, et al, Defendants.

Civ. A. No. 89–1701 (CRR).

United States District Court, District of Columbia.

Dec. 5, 1989.

Paul C. Besozzi, Washington, D.C., for plaintiff.

Dean George Hill, Timothy E. Welch, Washington, D.C., for defendants.

CHARLES R. RICHEY, District Judge.

The plaintiff, Weatherly Cellaphonics Partners ("Weatherly"), has sued the defendants, Eldon L. Hueber and Cellutech, Inc. ("Hueber"),[1] for fraud, breach of contract, and breach of fiduciary duty. Hueber now moves to dismiss and compel arbitration, arguing that this dispute should be resolved not by litigation but by arbitration as specified in the arbitration clause contained in the contract between the parties. The Court will grant Hueber's motion in part and will stay these proceedings pending arbitration because the arbitration clause covers this dispute.

## I.  Background Facts

Weatherly was interested in acquiring interests in certain cellular telephone markets being awarded through a lottery conducted by the Federal Communications Commission ("FCC"). In an attempt to improve its chances of profiting from the lottery, Weatherly joined forces with many other lottery participants. By way of the "Joint Agreement" ("Agreement")—an umbrella agreement tying together over one hundred lottery participants—Weatherly came to be contractually related with Hueber, operating through Cellutech. Under the Agreement, the parties that did not win the lottery were entitled to acquire minority interests in the markets awarded by the FCC to any other, more successful, party to the Agreement. Weatherly was not awarded a license while Hueber was awarded third place, a valuable runner-up position, in one of the markets.

Since the "conditional buy-sell" arrangement between the parties was phrased in terms of "winning" the lottery, the question arose whether Hueber was required to share its runner-up interest with the other parties. Although Hueber's position was that ownership rights in his runner-up interest had not been created, Hueber sent each party to the Agreement a letter containing: (1) a proposed addendum "clarify[ing] the positions of the various parties," which each party was supposed to sign and (2) a capital call so that the parties could share the legal and other expenses needed to prosecute Hueber's application and perhaps displace the first- and second-placed selectees.

Weatherly apparently never received the letter. After Hueber refused its somewhat belated tender of a $300 check in response to the capital call, Weatherly filed this action.[2] Weatherly alleges *inter alia* that Hueber failed to use reasonable efforts to give it timely notice of the capital call and that, although Weatherly attempted to tender the capital call immediately after belatedly receiving notice, Hueber has wrongfully refused the tender and prevented Weatherly from participating as a minority owner in Hueber's runner-up position. Hueber argues that an arbitrator and not a court must resolve this dispute because the Agreement contains the following arbitration clause: "Any disputes under this Agreement which cannot be resolved by the Parties shall be resolved by resort to the offices of the American Arbitration Association in Washington, D.C., and its rules and regulations applicable to commercial disputes."

## II.  Analysis

■ A preliminary procedural matter is who decides—the Court or an arbitra-

---

1. Hueber is the president and sole owner of Cellutech, and Cellutech has joined Hueber's pleadings in this proceeding. In view of the defendants' identical positions in this dispute, the Court will treat the defendants as one entity.

2. Weatherly originally filed this suit in the United States District Court for the Southern District of Mississippi. Deciding that it did not have *in personam* jurisdiction over the defendants, the Mississippi District Court transferred the case to this Court pursuant to 28 U.S.C. § 1404(a).

tor—whether there should be an arbitral or a judicial resolution of the merits of this dispute. It is well-established that, unless the parties have clearly and unmistakably provided otherwise, "the question of arbitrability—whether [an agreement] creates a duty for the parties to arbitrate [a] particular grievance—is undeniably an issue for judicial determination." *National R.R. Passenger Corp. v. Boston & Maine Corp.,* 850 F.2d 756, 759 (D.C.Cir.1988) (quoting *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986)). Moreover, even if the claim seems frivolous, a court decided the arbitrability issue may not address the potential merits of the underlying claim. *AT & T Technologies,* 475 U.S. at 649–50, 106 S.Ct. at 1418–19. Thus, the only issue presently before the Court is whether this dispute over Hueber's alleged misconduct regarding the capital call and addendum to the Agreement falls within the scope of the Agreement's arbitration clause.

### A. Facially Broad Arbitration Clause

The essence of Weatherly's argument is: (1) a party cannot be forced to arbitrate any dispute which it has not agreed to arbitrate; (2) Hueber's allegedly unilateral acts of fraud and breach of fiduciary duty were beyond the scope of the Agreement; and (3) therefore, Hueber may not use the arbitration clause as a "sword" to deny Weatherly its judicial remedies. The Court disagrees with all but the first of these propositions.

Weatherly makes entirely too much of the axiomatic proposition repeatedly stated in the case law that parties to an arbitration agreement "cannot be required to submit to arbitration any matter that they did not agree would be subject to that manner of dispute resolution." *Davis v. Chevy Chase Fin. Ltd.,* 667 F.2d 160, 165 (D.C. Cir.1981) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)). It is equally axiomatic that arbitration is a matter of contract. *E.g., AT & T Technologies,* 475 U.S. at 648, 106 S.Ct. at 1418; *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1352–53.

■ The Court must therefore attempt to discern the intent of the parties at the time they entered into the Agreement. In this regard, Weatherly's *post hoc* contentions that it never intended the arbitration clause to cover this type of dispute are entitled to little weight. While Weatherly may not have contemplated the precise scenario by which it has allegedly been divested of any minority ownership rights it may have had in Hueber's runner-up position, Weatherly did enter into a contract with an expansive arbitration clause.[3] Contained in Paragraph 19 of the Agreement, to which both Weatherly and Hueber were parties, the arbitration clause covers "[a]ny disputes under this Agreement" without mentioning any exceptions.

■ The Court fails to comprehend how this dispute could be beyond the scope of the Agreement when the Agreement provides the only basis for any of Weatherly's claims against Hueber. After all, Weatherly's Complaint alleges fraud, *breach of contract,* and breach of fiduciary duty,[4]

---

**3.** Weatherly has not attempted to show that the Agreement was anything other than an arms-length bargain between parties that were experienced and sophisticated in this particular area of communications law. Courts should give effect to arbitration clauses contained in such freely-negotiated contracts. *See Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519–20, 94 S.Ct. 2449, 2457–58, 41 L.Ed.2d 270 (1974); *Snyder v. Smith,* 736 F.2d 409, 419 (7th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). Furthermore, Weatherly has not alleged that the arbitration clause was the result of "the sort of fraud or overwhelming economic power that would provide grounds 'for the revo-

cation of any contract.'" *Rodriguez de Quijas v. Shearson/American Express, Inc.,* — U.S. —, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).

**4.** Although its Complaint is based on those three theories, Weatherly's Response to Defendant's Application for Arbitration and Motion to Dismiss mentions only fraud and breach of fiduciary duty. The Court has no way of knowing if the omission of the breach of contract claim was an oversight or if it was a tactical choice made for the purpose of emphasizing that this

and the various kinds of relief sought (money damages, a declaratory judgment, and an injunction) all revolve around redressing Hueber's alleged failure to live up to his part of the contract by unilaterally redistributing Weatherly's minority interest in a certain cellular telephone market.

It is clearly proper to utilize arbitration to resolve claims brought under: the § 10(b) antifraud provisions of the Securities Exchange Act of 1934, the RICO statutes, or the antitrust laws. *See Rodriguez de Quijas v. Shearson/American Express, Inc.,* —— U.S. ——, 109 S.Ct. 1917, 1920, 104 L.Ed.2d 526 (1989) (citing *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler-Chrysler Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). In light of these holdings by the Supreme Court, the Court sees no reason why it would be improper to compel arbitration of Weatherly's common-law fraud and breach of fiduciary duty claims, *see Fischer v. NWA, Inc.,* 883 F.2d 594, 600–01 (8th Cir.1989) (affirming district court's dismissal of common law claims, including fraud, because plaintiff failed to comply with mandatory arbitration clause), even though they may seem slightly less related to the Agreement than the breach of contract claim. Put simply, if Weatherly wants to claim rights under a contract—the Agreement—then it must also be bound by a perfectly valid

provision of that contract—the broadly drawn arbitration clause.

### B. Strong Presumption Favoring Arbitration

In any event, even if Weatherly's position were more persuasive than the foregoing "plain language" analysis indicates, Weatherly has failed to overcome the strong presumption in favor of arbitration. The Federal Arbitration Act ("Arbitration Act"), 9 U.S.C. § 1 *et seq.,* requires that, when a suit is brought in a federal court

> upon any issue referable to arbitration under an agreement in writing for such arbitration, the court ..., upon being satisfied that the issue involved in such suit ... is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

*Id.* § 3 (emphasis added). The District of Columbia ("D.C.") statute upon which Hueber relies has a similar provision that also favors arbitral rather than judicial resolution of disputes when parties have entered into a contract with an arbitration clause. *See* D.C.Code Ann. § 16–4302. Therefore, under either the federal or the D.C. statute, the Court should apply a presumption in favor of arbitration.[5]

dispute falls outside of the Agreement and is therefore not covered by the arbitration clause. In any event, artful and creative pleading should not be determinative. Instead, the issue is "whether the factual allegations underlying [the claims] ... are within the scope of the arbitration clause, *whatever the legal labels attached to those allegations."* *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 723 F.2d 155, 159 (1st Cir.1983), *aff'd,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Under any theory Weatherly could advance, this is at bottom a dispute about a contract that should be resolved in accordance with the contract's arbitration clause.

**5.** Hueber's Application for Arbitration is made pursuant to the D.C. arbitration statute, *see* D.C. Code Ann. § 16–4301 *et seq.,* and there is only a general reference in passing to the Arbitration Act in his reply to Weatherly's response. Hueber appears to have relied on the D.C. statute because Paragraph 20 of the Agreement speci-

fies that D.C. law shall govern. In any event, the Court does not need to decide whether federal or D.C. law governs because the Arbitration Act and the D.C. statute are in agreement on the issue of favoring arbitration when the parties have entered into a contract containing an arbitration clause. However, if the D.C. statute were found to fall short of the Arbitration Act's solicitude towards arbitration, federal law would govern. *See, e.g., Volt Information Sciences, Inc. v. Board of Trustees of Stanford Univ.,* —— U.S. ——, 109 S.Ct. 1248, 1254–55, 103 L.Ed.2d 488 (1989) (Arbitration Act does not expressly or impliedly pre-empt entire field of state arbitration law but it does pre-empt state law that prevents complete and full accomplishment of Congress' objectives); *Perry v. Thomas,* 482 U.S. 483, 490–91, 107 S.Ct. 2520, 2525–26, 96 L.Ed.2d 426 (1987) (Arbitration Act § 2 pre-empts state statute requiring that litigants must be provided a judicial forum to resolve wage disputes). Since the Arbitration Act sets a floor

The Arbitration Act covers all contracts "evidencing a transaction involving commerce," 9 U.S.C. § 2, and it defines commerce broadly as "commerce among the several States ..., or in the District of Columbia, ... or between the District of Columbia and any state," *id.* § 1. The "involving commerce" language must be construed "very broadly" to be co-extensive with Congress' power under the commerce clause to reach activities affecting interstate commerce. *Snyder v. Smith,* 736 F.2d 409, 418 (7th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). While the parties have not addressed this precise issue, the contract at issue here seems to involve interstate commerce within the Arbitration Act's sweeping definition. Executed in D.C., the Agreement involves over one hundred participants—including a Mississippi general partnership (Weatherly), an Illinois corporation (Cellutech), and an Illinois resident (Hueber)—in a lottery conducted by a federal agency for cellular telephone markets in Michigan. *See id.* (enumerating contacts partnership agreement had with various states and concluding that agreement affected interstate commerce).

When it enacted the Arbitration Act, Congress intended to "revers[e] centuries of judicial hostility to arbitration agreements" by "placing arbitration agreements 'upon the same footing as other contracts.'" *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (quoting *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2452–53, 41 L.Ed.2d 270 (1974); H.R. Rep. 96, 68th Cong., 1st Sess. 1, 2 (1924)). Moreover, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

The presumption of arbitrability when a contract contains an arbitration clause was set out by the Supreme Court over 25 years ago in the labor dispute context. *See, e.g., AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648–51, 106 S.Ct. 1415, 1418–20, 89 L.Ed.2d 648 (1986) (discussing *Warrior & Gulf,* 363 U.S. 574, 80 S.Ct. 1347, and two other cases making up so-called *Steelworkers Trilogy*). However, it is now well-established that this presumption of arbitrability also applies outside of the labor context to commercial contracts with broad arbitration clauses. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 617, 624–27 & n. 13, 105 S.Ct. 3346, 3349, 3352–54 & n. 13, 87 L.Ed.2d 444 (1985) ("[a]ll disputes, controversies or differences which may arise out of or in relation to [certain specified Articles] or for the breach thereof"); *Moses H. Cone Memorial Hosp.,* 460 U.S. at 5, 24–25, 103 S.Ct. at 931, 941–42 ("[a]ll claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof"); *Pearce v. E.F. Hutton Group, Inc.,* 828 F.2d 826, 828, 829 (D.C.Cir.1987) ("any controversy ... arising out of my employment or the termination of my employment"); *Hanes Corp. v. Millard,* 531 F.2d 585, 588, 598 (D.C.Cir.1976) ("[a]ll disputes arising from the interpretation of this contract or issuing from it"); *Schacht v. Beacon Insurance Co.,* 742 F.2d 386, 391 (7th Cir.1984) (any difference of opinion ... with respect to the interpretation of this Agreement or the performance of the respective obligations of the parties").

The arbitration clause before the Court, which covers "[a]ny disputes under this Agreement which cannot be resolved by the Parties," is at least as broad as the arbitration clauses at issue in the cases cited above. The Court will not unduly restrict the scope of this arbitration clause merely because it is short and to the point and not filled with "lawyer-like" language employing three or four synonyms for every significant concept.

below which state or D.C. law may not go in hindering arbitration, the Court will rely primarily on federal case law.

The breadth of the Agreement's arbitration clause is even more apparent when compared with a narrow arbitration clause. For example, in a suit over whether a former corporate employee was entitled to retain ownership of that corporation's stock after leaving its employ, the United States Court of Appeals for this Circuit addressed an arbitration clause that provided:

> The fair market value of the offered Shares shall be determined by mutual agreement between the Corporation and the Stockholder. If they are unable to so agree, the matter shall be submitted promptly to arbitration under the rules of the American Arbitration Association. The determination of the arbitrator or arbitrators shall be final and binding upon Stockholder and the Corporation as to the fair market value of the offered shares.

*Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 165 (D.C.Cir.1981). Reviewing the arbitrator's decision that the former employee was contractually obligated to sell his shares of stock back to the corporation, the *Davis* court held that the arbitrator had exceeded his authority, which was limited by the arbitration clause to determining the "fair market value" of any shares that the former employee was transferring. *Id.* at 166–67. The arbitration clause before this Court, by comparison, has no such limiting language, and therefore the presumption in favor of arbitrability applies.

### C. Relief

■ Having determined that the arbitration clause of the Agreement covers this dispute, the Court must decide the final issue of what relief should be granted. In addition to moving the Court to compel arbitration, Hueber has moved to dismiss Weatherly's suit. However, both the Arbitration Act and the D.C. arbitration statute contemplate that the court shall stay judicial proceedings pending arbitration of the dispute. 9 U.S.C. § 3; D.C.Code Ann. § 16–4302. Neither of these provisions mentions dismissal as an appropriate remedy when an arbitrable dispute is before a court. The Court will therefore stay these proceedings and order that the parties arbitrate this dispute, as specified in the Agreement's arbitration clause, before the American Arbitration Association in D.C.[6]

### III. Conclusion

A "plain language" analysis of the Agreement's arbitration clause indicates that this dispute has arisen under the Agreement and should therefore be resolved by arbitration. The Federal Arbitration Act, a D.C. arbitration statute, and federal case law recognizing a presumption in favor of arbitration provide further support for the Court's decision to compel arbitration and stay these proceedings.

An Order in accordance with the foregoing Opinion will be issued of even date herewith.

### ORDER

In accordance with the Court's Opinion of even date herewith, it is, by the Court, this 5 day of December, 1989,

ORDERED that the parties shall be, and hereby are, directed to submit their dispute to the American Arbitration Association in the District of Columbia in accordance with Paragraph 19 of the Joint Agreement; and it is

FURTHER ORDERED that the proceedings in the above-entitled case shall be, and hereby are, stayed pending arbitration.

6. The Arbitration Act provides that a court may compel arbitration only within its own district. *See* 9 U.S.C. § 4. Because the Agreement states that arbitration shall occur in D.C., this Court is not presented with the dilemma that arises when a contract requires arbitration in a location not within the jurisdiction of the district court deciding the arbitrability issue. *See, e.g., Snyder v. Smith,* 736 F.2d 409, 418, 420 (7th Cir.) (and cases cited therein), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984).