Timothy M. ROE, on behalf of himself
and all others similarly situated,
Plaintiff,

v.

Phillip A. GRAY, an individual, Ameri-
can Fair Credit Association, Inc., a
Colorado corporation, United Insur-
ance Companies, Inc., a Delaware cor-
poration, United Membership Market-
ing Group, LLC, a Colorado limited
liability company, XYZ, Household
Bank (SB), N.A., and Household Cred-
it Services, Inc., Defendants.

No. CIV. A. 01–B–0409.

United States District Court,
D. Colorado.

Oct. 10, 2001.

Jane Michaels, Holland & Hart, LLP, Denver, CO, for Timothy M. Roe.

Carolyn J. Ratner, Morrison & Foerster, United States District Court, Denver, CO, Richard P. Kissinger, Kissinger & Fellman, P.C., Denver, CO, for American Fair Credit Ass'n.

Frederick J. Baumann, Douglas B. Tumminello, Rothgerber, Johnson & Lyons, LLP, United States District Court, Denver, CO, for United Ins. Companies, Inc.

Stewart McNab, Stewart McNab, Atty at Law, Denver, CO, for United Membership Marketing Group, LLC.

John A. DeSisto, Matthew D. Collins, Featherstone DeSisto LLP, Denver, CO, for Household Bank (SB), N.A., Household Credit Services, Inc.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiff brings claims based on violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq. ("CROA"), the Truth–in–Lending Act, 15 U.S.C. § 1601 et seq., as well as a breach of contract claim and a request for declaratory judgment. There are currently seven pending motions. Defendant Household Bank (SB), N.A. and Household Credit Services, Inc. (collectively, "the Household Defendants") move to compel arbitration. Defendants Phillip Gray, American Fair Credit Association, Inc. ("AFCA"), and United Insurance Companies, Inc. ("UICI") have filed notices that they have petitioned the United States District Court for the Eastern District of North Carolina to compel arbitration in this matter. In addition, all of the Defendants have filed motions to stay proceedings in this case pending arbitration. Plaintiff Timothy Roe opposes all of the motions. Moreover, Plaintiff has filed two motions for expedited discovery on the limited issue of arbitrability. The first motion is directed at Defendants Phillip Gray, AFCA, UICI, United Credit National Bank ("UCNB"), and United Membership Marketing Group ("UMMG")(collectively, "the AFCA Defendants"); the second motion is directed at the Household Defendants. All Defendants oppose the motions for expedited discovery. The motions are adequately briefed and a hearing on Plaintiff's motion for expedited discovery was held on October 5, 2001. The motions for stay were addressed at oral argument as integral to the question of expedited discovery. Further oral argument would not materially aid the determination of the other motions. For the following reasons, I deny without prejudice the Household Defendants' motion to compel arbitration, grant all of the motions to stay the proceedings, and deny without prejudice Plaintiff's motions for expedited discovery directed to the AFCA and Household Defendants.

### I. Background

Defendant AFCA is a membership organization which purports to help financially troubled Americans regain their credit standing by means of credit education, credit access, and discount savings opportunities. AFCA promises people that if they join, AFCA will sponsor them for a credit card available only to AFCA members ("AFCA credit card").

All of the Defendants have a connection to AFCA. The claims against UCNB and the Household Defendants arise out of their status as issuers, at various points in time, of the AFCA Visa Card. According to

the *Complaint*, Defendant UMMG provided services to AFCA and its members. The *Complaint* also alleges that UICI was the owner and controller of UMMG and UCNB. Defendant Phillip Gray is an AFCA representative. Additionally, the *Complaint* alleges that "Defendants, and certain or each of them, were the agents, joint venturers, partners, or representatives of each other . . . ." *Complaint* at ¶ 14.

Plaintiff joined AFCA in April 1997 by signing AFCA's Membership Agreement. The costs of AFCA membership and the AFCA credit card consist of an AFCA initiation fee of $39, monthly AFCA membership dues of $39 during the first year of membership, and a credit card fee of $55. In order to resign from AFCA membership, a person must give 90 days prior written notice by hand delivery or certified mail at AFCA's offices in Lakewood, Colorado. During those 90 days, the member must continue to pay AFCA's monthly dues.

At the time Plaintiff signed the AFCA Membership Agreement, it did not contain an arbitration provision. *See AFCA's Motion to Stay, Exhibit B–1.* However, the Agreement did contain a provision allowing for subsequent amendment of the Membership Agreement. *See id.* ("This Contract may be amended or modified only by an instrument in writing.").

In January 1998, AFCA mailed to all of its members a proposed amendment to the Membership Agreement, which was entitled "Arbitration of Disputes Agreement" ("AFCA Arbitration Agreement"). *See AFCA's Motion to Stay, Exhibit B–2.* The letter accompanying the proposed amendment informed existing members that they had the option to reject the proposed amendment by giving written notice canceling their membership. *See AFCA's Motion to Stay, Exhibit B–4.* AFCA waived the 90–day notice provision for can-

celing membership for those rejecting the arbitration amendment. *See id.* The letter specifically informed members that "by continuing AFCA membership . . . you have agreed to abide by the [AFCA Arbitration Agreement]." *Id.; Weseloh Declaration* at ¶ 8. Plaintiff did not object to the amendment and continued to participate in the AFCA program. *See Weseloh Declaration* at ¶ 9.

The AFCA Arbitration Agreement requires all disputes relating in any way to the Plaintiff's membership in AFCA to be arbitrated in the state where the claimant lives. *See AFCA's Motion to Stay, Exhibit B–2.* In this case, Plaintiff lives in North Carolina. Under the AFCA Arbitration Agreement, the AAA Commercial Arbitration Rules apply. *See id.* The AFCA Arbitration Agreement prohibits an arbitrator from changing or altering the terms of the AFCA Membership Agreement, including the arbitration provision. *See id.* It says nothing about the allocation of arbitration fees and costs, except that "provided your Dispute is not clearly frivolous, AFCA will advance the second $100 of the filing fees for any Arbitration which you may file against us." *Id.* In addition, the AFCA Arbitration Agreement states that the consumer will bear "all costs and expenses, including reasonable attorney's fees" if the AFCA member "fails to submit to Arbitration following a proper demand to do so." *Id.* The AFCA Arbitration Agreement also states that members are prohibited from participating in a class action against AFCA. *See id.*

Plaintiff applied for and received an AFCA Affinity Visa Credit Card in April 1997, which was issued by Bankfirst. In connection with Plaintiff's application for credit, Plaintiff received a Bankfirst Visa Cardholder Agreement, which governed the credit relationship. The Bankfirst agreement expressly informed the card-

holders that Bankfirst had the right to modify the agreement "by mailing notice of the modification" to the cardholder. *Kuiper Declaration, Exhibit C* at ¶ 9.

In December 1997, Bankfirst notified all of its AFCA Visa cardholders, including Plaintiff, of certain changes to the Cardholder Agreement, which were to be effective January 25, 1998. *Kuiper Declaration, Exhibit D.* The changes included the adoption of an arbitration clause ("Bankfirst Arbitration Agreement"). *See id.* In addition, the Notice informed cardholders of their right to reject the arbitration provision, provided specific instructions for rejecting the arbitration provision, and informed cardholders that use of their card after the effective date would be deemed acceptance of the arbitration provision. *See id.* Plaintiff did not reject the arbitration provision. *See Kuiper Declaration* at ¶ 14. Instead, he continued to use his Bankfirst credit card. The arbitration provision stated that either Bankfirst or the cardholder could elect to have a dispute resolved by arbitration. *See Kuiper Declaration,* Exhibit D. "Dispute" was defined as "any claim or controversy of any kind which arises out of or is in any way related to [the Bankfirst Cardholder Agreement]." *See id.* The arbitration would be administered by the American Arbitration Association ("AAA") in the state of the cardholder's residence. *See id.* Each arbitration would be governed by the FAA and the laws of the state of South Dakota. *See id.*

In June 1998, Defendant UCNB acquired a portfolio of credit card accounts, including Plaintiff's account, from Bankfirst. *See Kuiper Declaration* at ¶ 16. UCNB continued to provide credit under the Bankfirst Cardholder Agreement. *See id.* at ¶ 17. In Fall 2000, Household purchased a portfolio of credit card receivables from UCNB, including Plaintiff's account. In November 2000, Household sent the UCNB credit card holders whose accounts it purchased, including Plaintiff, a letter announcing the transfer of the accounts to Household and making certain changes to the terms on which Household would continue to extend credit to the UCNB cardholders. *See Plaintiff's Response to Household's Motion to Compel at Exhibit B.* The changes included a provision that, effective immediately, the law governing the parties' contract would be federal law and the laws of the state of Nevada (Household Bank's principal place of business). *See id.*

In January 2001, Household provided Plaintiff and other UCNB cardholders with a cardmember Agreement and Disclosure Statement, which replaced the UCNB/Bankfirst Cardholder Agreement. *See id. at Exhibit D.* The Household Cardmember Agreement explained that: "This is a replacement to your United Credit National Bank Cardholder Agreement and is effective upon receipt. There are changes highlighted that will be effective with your billing cycle ending on or after March 24, 2001." *See id.* The Household Cardmember Agreement contained an arbitration clause, which was not a highlighted term ("Household Arbitration Agreement"). *See id.* The arbitration clause stated that either party could elect binding arbitration to resolve any claim, dispute or controversy. *See id.* The arbitration hearing would take place in the city nearest to the cardholder's residence where a federal district court is located or at such other location as agreed by the parties. *See id.* The arbitration could be administered by the National Arbitration Forum ("NAF"), AAA, or JAMS. *See id.* As to the costs of arbitration, the provision stated:

> On any Claim you file, you will pay the first $50 of the filing fee. At your request we will pay the remainder of the filing fee and any administration or

hearing fees charged by the arbitration administration on any Claim submitted by you in arbitration up to a maximum of $1,500. If you are required to pay any additional fees to the arbitration administrator, we will consider a request by you to pay all or part of the additional fees; however, we shall not be obligated to pay any additional fees unless the arbitrator grants you an award. . . . The parties shall bear the expense of their respective attorney's fees, except as otherwise provided by law. . . .

*Id.*

Plaintiff filed his *Complaint* in this action on March 7, 2001, seeking class certification and relief for tens of thousands of individuals who, like him, were allegedly victims of a credit repair scheme perpetrated by Defendants. No class has been certified. The Household Defendants have filed a motion to compel arbitration. The AFCA Defendants have filed notices that they have petitioned the District Court for the Eastern District of North Carolina to compel arbitration. All Defendants move for a stay pending arbitration. In his Response briefs to these motions, Plaintiff argues that Defendants' attempt to unilaterally impose a purported mandatory arbitration clause on him violates the Credit Repair Organization Act, 15 U.S.C. § 1679 et seq. ("CROA"). Therefore, according to the Plaintiff, the arbitration provisions are invalid and unenforceable. Additionally, Plaintiff argues the arbitration provisions are invalid because they were not part of the original contracts and the proposed amendments failed to create a new contract. In the alternative, Plaintiff argues that the arbitration provisions at issue may also be unenforceable because of the financial burden they would impose on him. However, Plaintiff argues that he will need limited discovery to ascertain the extent of the financial burden which would be imposed. Therefore, he moves for expedited discovery on the limited issue of arbitrability.

## II. AFCA's and Gray's Motion to Stay

Defendants AFCA and Gray request that this Court stay all proceedings in this action pending (1) resolution of their Petition for an Order to Compel Arbitration in the Eastern District of North Carolina, and, should that court order Plaintiff to arbitrate, (2) resolution of Plaintiff's claims on the merits in arbitration. Plaintiff argues that this court should not stay the proceedings because his claims are not referable to arbitration. First, Plaintiff argues that his claims arise under the CROA and, therefore, are not arbitrable as a matter of law. Second, Plaintiff argues that the AFCA Arbitration Agreement was invalidly formed under traditional principles of contract law. Third, Plaintiff argues that arbitration would be prohibitively expensive.

AFCA and Gray argue that because the AFCA Arbitration Agreement specifies that arbitration should take place in the location of the claimant's residence, which in this case is North Carolina, they filed a motion to compel arbitration in the District Court for the Eastern District of North Carolina and that court should decide whether this dispute is subject to arbitration. Plaintiff argues that it was improper for AFCA and Gray to file a motion to compel in the Eastern District of North Carolina because under the first-to-file rule, this court has jurisdiction over the case.

In general, under the first-to-file rule, a court "which first acquired jurisdiction should be the one to try the lawsuit." *Great N. Ry. Co. v. Nat'l R.R. Adjustment Bd.*, 422 F.2d 1187, 1193 (7th Cir.1970); *Robertson v. Dep't of Defense*, 402 F.Supp. 1342, 1346 (D.D.C.1975). However, if I do not have the power to compel arbitration in North Carolina, as the Arbitration Agreement contemplates, AFCA and Gray

could not receive the relief they are seeking if they had filed their motion to compel here. AFCA and Gray argue that under the FAA, only the district where arbitration will take place has the power to compel arbitration and, therefore, it was proper for them to file their petition to compel arbitration in North Carolina. Plaintiff argues that any court which has subject matter jurisdiction may compel arbitration to take place even in another district and, therefore, this court could compel arbitration to take place in North Carolina.

Section 4 of the Federal Arbitration Act ("FAA") sets forth the circumstances under which parties may seek to compel arbitration. It also establishes the appropriate venue in which they may do so, stating:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof....

9 U.S.C. § 4.

The Tenth Circuit has not decided how a district court should proceed when a suit pending before it involves an arbitration agreement which specifies that arbitration should take place outside of the court's district. There are at least three possibilities. First, the district court could compel arbitration outside of its district. *Dupuy–Busching General Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275 (5th Cir.1975)(interpreting Section 4 of the FAA to empower the court to decide the issue of arbitrability and to compel arbitration outside of its district). Second, the district court could compel arbitration in its district and simply ignore the contractually specified location. *See Textile Unlimited, Inc. v. A. BMH & Co., Inc.*, 240 F.3d 781, 783 (9th Cir.2001)(holding that FAA venue provisions are discretionary, not mandatory and, thus, the FAA "does not require venue in the contractually-designated arbitration locale."). Or, third, the district court could simply lack the power to compel arbitration in any district. In that event, therefore, the court should either transfer the action to another district or stay the proceedings pending resolution of the arbitration decision in the other district. *See Snyder v. Smith*, 736 F.2d 409, 418–420 (7th Cir.1984)(holding that where the arbitration agreement contains a forum selection clause, only the district court in that forum can issue a § 4 order compelling arbitration), *overruled on other grounds, Felzen v. Andreas*, 134 F.3d 873 (7th Cir.1998).

*Dupuy–Busching* is an example of the first possibility. *See Dupuy–Busching*, 524 F.2d 1275 (5th Cir.1975). In that case, the Fifth Circuit held that when a party seeking to avoid arbitration brings a suit for injunctive relief in a district other than that in which arbitration is to take place under the contract, the court may compel arbitration to take place in the location specified in the arbitration agreement. The court reasoned that a liberal reading of the § 4 venue provisions was "consistent

with the policy underlying the Federal Arbitration Act." *Id.* at 1278.

The second possibility, that a party's right to file a petition to compel arbitration in any district trumps any contractually specified arbitration forum, was adopted by the Ninth Circuit in *Textile Unlimited. See Textile Unlimited,* 240 F.3d at 784. In *Textile Unlimited,* the court applied a liberal reading of the § 4 venue provisions and concluded that nothing in the FAA requires that the plaintiff's action to enjoin arbitration be brought in the district where the contract designated the arbitration to occur. *Id.* The *Textile Unlimited* court relied on the recent Supreme Court decision of *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,* 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000).

In *Cortez Byrd Chips,* the Supreme Court held that the FAA's venue provisions in §§ 9–11 are permissive and allow a motion to confirm, vacate, or modify an arbitration award to be brought in any district in which venue is proper under the general federal venue statute, 28 U.S.C. § 1391. *Id.* Section 9 of the FAA provides that when filing an action to confirm an arbitration award, if no venue is specified in the contract, "such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. Section 10(a), which governs motions to vacate arbitration awards, provides that "the United States Court in and for the district wherein the award was made may make an order vacating the award." 9 U.S.C. § 10(a). As to modifications or corrections of arbitration awards, § 11 provides that "the United States Court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration." 9 U.S.C. § 11. The Court noted that the word choice of "may," which was used in the sections, could be read as

permissive, but that the word choice was "not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority." *Cortez Byrd Chips,* 529 U.S. at 198, 120 S.Ct. 1331 (citing *United States v. Rodgers,* 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983)). Therefore, the Court looked at the statutory history in order to determine congressional intent. The Court explained that the FAA was enacted in 1925, at a time when there was a restrictive general venue statute. *Id.* at 199–200, 120 S.Ct. 1331. Based on this historical context, the Court concluded that the venue provisions provided in §§ 9–11 of the FAA did not supplant the general venue provisions of 28 U.S.C. § 1391(a), but rather were intended to liberalize venue choice. *Id.*

The *Textile Unlimited* court believes the Supreme Court's analysis of §§ 9–11 applies to the FAA as a whole. Consequently, in its view, the rationale of FAA's permissive venue provisions applies to § 4 as well. *Textile Unlimited,* 240 F.3d at 784. The court points out that the language of § 4 provides that venue is proper for an action to compel arbitration in "any United States district court which, save for such agreement, would have jurisdiction under Title 28." *Id.* at 784–85. Section 4 continues by stating that "the court shall ... order ... the parties to proceed to arbitration in accordance with the terms of the agreement" and "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." *Id.* However, the *Textile Unlimited* court does not believe this language mandates that the proper venue is the contractually specified location for arbitration. *Id.* at 785–86. Instead, the court reasons that, by its terms, § 4 only confines the arbitration to the district in which the petition to compel is filed. *Id.* It does not require that the petition be filed

where the contract specified that arbitration should occur. *Id.* (citing *Continental Grain Co. v. Dant & Russell,* 118 F.2d 967, 969 (9th Cir.1941)).

Additionally, the *Textile Unlimited* court concluded that § 4 is narrowly tailored and, by its terms, only applies to actions to compel arbitration. *Id.* at 785. Thus, the court reasoned that the injunction action in *Textile Unlimited* should be considered under general venue provisions. *Id.* (citing *First of Mich. Corp. v. Bramlet,* 141 F.3d 260 (6th Cir.1998) (holding that district court in Michigan had venue to hear petition seeking to enjoin pending arbitration in Florida under the general venue provision of 28 U.S.C. § 1391)). In conclusion, the *Textile Unlimited* court explained that applying a liberal reading to § 4's venue provisions was:

> consistent with the underpinnings of arbitration theory. One of the threads running through federal arbitration jurisprudence is the notion that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)[ (citation omitted) ]. Requiring a party to contest the very existence of an arbitration agreement in a forum dictated by the disputed arbitration clause would run counter to that fundamental principle.

*Id.* at 786.

The third possibility is that § 4 mandates that when the arbitration agreement contains a forum selection clause, only the district court in that forum can issue an order compelling arbitration. This view is followed by a majority of courts. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,* 49 F.3d 323, 327 (7th Cir.1995)(holding that where the arbitration agreement contains a forum selection clause, only the district court in that forum can issue a § 4 order compelling arbitration); *Snyder v. Smith,* 736 F.2d 409, 418–420 (7th Cir.1984)(same); *Econo–Car Int'l, Inc. v. Antilles Car Rentals, Inc.,* 499 F.2d 1391, 1394 (3d Cir.1974)(holding that District Court of the Virgin Islands may not compel arbitration in New York, the site chosen by the parties' arbitration agreement); *M.C. Constr. Corp. v. Gray Co.,* 17 F.Supp.2d 541, 548 (W.D.Va.1998)("As a result of the territorial limitation in § 4, [the Western District of Virginia] cannot enter an order compelling arbitration in Kentucky"); *Dempsey v. George S. May Int'l,* 933 F.Supp. 72 (D.Mass.1996)(transferring action to the N.D. Ill. for enforcement of the arbitration clause); *Federated Rural Elec. Ins. Co. v. Nationwide Mut. Ins. Co.,* 874 F.Supp. 1204, 1209–1210 (D.Kan.1995)(transferring the case to Ohio because "if the claims brought by [the plaintiff] must be arbitrated, this court would be unable to compel arbitration and at the same time comply with the parties' agreement that arbitration take place in Ohio."); *Haluska v. RAF Fin. Corp.,* 875 F.Supp. 825, 828 (N.D.Ga.1994)("The Court, however, cannot rewrite the parties' contract and provide an arbitration situs that was not enumerated in the forum selection clause of the arbitration agreement"); *Bosworth v. Ehrenreich,* 823 F.Supp. 1175, 1178 (D.N.J.1993)(court refused to rule on defendant's § 4 motion to compel arbitration because the forum selection clause specified New York); *Alpert v. Alphagraphics Franchising, Inc.,* 731 F.Supp. 685, 689 (D.N.J.1990)(agreement provided for arbitration in Arizona but plaintiff filed motion to compel arbitration in New Jersey; New Jersey district court complied with § 4 by staying proceedings so that defendant could move Arizona court to compel arbitration there); *Netherlands Curacao Co., N. V. v. Kenton Corp.,* 366 F.Supp. 744, 745–746

(S.D.N.Y.1973)(defendant cannot move in one district to compel arbitration in another); *Lawn v. Franklin,* 328 F.Supp. 791, 793 (S.D.N.Y.1971)("The proper District within which the petition for such order should be filed is the District where the 'proceedings' by virtue of the contract of the parties are to take place."). Although all of these cases were decided before the Supreme Court's *Cortez Byrd* decision, many of the cases recognize distinct differences between § 4 and §§ 9–11. *See Lauer,* 49 F.3d at 329.

First, the *Lauer* court noted that the mandatory statutory language in § 4 was distinguishable from the permissive language in §§ 9 and 10. *Id.* Although § 4 does not initially prescribe a venue, stating that parties may petition "any United States district court" which would otherwise have jurisdiction, *see Cortez Byrd Chips,* 529 U.S. at 199, 120 S.Ct. 1331 (quoting this language from § 4 and stating that it is "even more obviously permissive language" than that contained in §§ 9–11), this broad authority quickly narrows. The statute subsequently mandates that "the hearing and proceedings ... *shall* be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4 (emphasis added). Unlike the venue provisions of §§ 9–11, which specify that application for an order confirming, vacating, or modifying an award *may* be made to the United States district court within which such award was made, the directive of § 4 is mandatory. The mandatory language clearly requires a geographic link between the site of the arbitration and the district which compels such arbitration.

In addition, the statute directs the district court to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," which presumably includes the arbitration forum provision. 9 U.S.C. § 4. The pur-

pose of the FAA is to make arbitration agreements valid and enforceable. *Southland Corp. v. Keating,* 465 U.S. 1, 12–13, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). The right and duty to arbitrate disputes is purely a matter of contractual agreement between the parties. An arbitration agreement, including its forum selection clause, is a freely negotiated contract between the parties. Courts must give effect to such forum selection clauses. *M/S BREMEN v. Zapata Off–Shore Co.,* 407 U.S. 1, 15–19, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). *See also Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519–20, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (holding enforceable forum selection clauses in arbitration agreements); *Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 680–81 (5th Cir.1976).

The Seventh Circuit noted that if a court was allowed to order arbitration to take place within its district in contravention of a freely negotiated selection clause:

> [a]ny party to an arbitration agreement could avoid the effect of the agreed-to forum merely by filing suit in a different district. This in turn could lead to the parties racing to different courthouses to obtain what each thinks is the most convenient forum for it, in disregard of its contractual obligations. This disregard is not what Congress intended when it enacted a statute to make arbitration agreements enforceable. Thus, the district court in this case had no power under the statute to order arbitration in its district in contravention of the parties' agreement.

*Snyder,* 736 F.2d at 419–20 (citations omitted). In *Snyder,* the District Court for the Northern District of Illinois ordered the opposing parties to arbitration in that district, despite a forum selection clause in the parties' agreement specifying that arbitration was to take place in Houston,

Texas. *See id.* The Seventh Circuit reversed, finding that § 4 precluded a district court from ordering arbitration to take place outside of its own district, and just as clearly precluded the court from ordering arbitration to take place within its district in contravention of a freely negotiated forum selection clause. *See id.* The Court concluded that "[i]n a case such as this, where the petition to compel arbitration was the only relief sought, the district court should dismiss the petition or, upon motion, stay its proceedings." *Id.* at 420.

Based on the combined statutory requirements of a geographic link between the arbitration site and the district which compels arbitration and because the court must respect the terms of the parties' arbitration agreement, the majority of courts have concluded that when the location of arbitration is contained in the arbitration agreement, the statute limits the fora in which motions to compel can be brought.

In addition, the *Lauer* court noted that the principles of judicial economy, which supported a permissive interpretation of §§ 9–10's venue provisions, did not require the same result under § 4. *See Lauer*, 49 F.3d at 329. "Post-arbitration litigation [pursuant to §§ 9–11] does not contemplate further arbitration; it is merely concerned with the fate of the previous proceeding. The location of the now-completed arbitration is immaterial, and there are few benefits to be gained from confining further action to the same jurisdiction." *Id.* at 329–30. In contrast, pre-arbitration litigation, which takes place under § 4, "is intended to lead directly to, and to focus on, the future arbitration proceeding." *Id.* at 330.

The legislative history of the FAA lends additional credence to the majority view. Describing the § 4 proviso that requires the hearings and the petition to issue from the same district, the Senate Committee on the Judiciary indicated that the statute was intended to require a party seeking to compel arbitration to apply to the proper court. *See E.C. Ernst, Inc. v. Potlatch Corp.*, 462 F.Supp. 694 (S.D.N.Y.1978)(citing S.Rep. No. 536, 68th Cong., 1st Sess. 3 (1924)).

Based on the unique construction of § 4 as a restriction on the authority of non-forum courts, the right of parties to select a location for arbitration, and the procedural posture of motions to compel, I conclude that the majority's position is the more reasonable interpretation of § 4. Therefore, if an arbitration agreement contains a forum selection clause, only the district court in that forum can issue a § 4 order compelling arbitration. Here, the AFCA Arbitration Agreement specifies that arbitration will take place in North Carolina but I do not have the power to compel arbitration in North Carolina. Because I lack such power and because the arbitration agreement specifically identifies North Carolina as the location for arbitration, AFCA and Gray properly filed a motion to compel in that district instead of here. Additionally, because the Eastern District of North Carolina will decide whether to grant the motion to compel arbitration, it should also decide the issue of arbitrability. *See Lauer*, 49 F.3d at 329 (interpreting § 4 "as mandatory with respect both to compelling arbitration and to reviewing the arbitrability of claims...."). *But see Weatherly Cellaphonics Partners v. Hueber*, 726 F.Supp. 319 (D.D.C.1989)(suggesting in dictum that a nonforum court might be able to decide arbitrability questions).

AFCA and Gray argue that I should stay the proceedings here, pursuant to § 3 of the FAA, pending the District Court for the Eastern District of North Carolina's decision on the motion to compel arbitra-

tion. Section 3 of the FAA governs the issuance of a stay pending arbitration. The statute states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, *upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement,* shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Before staying this case under § 3, I must be satisfied that the issues involved in the suit are referable to arbitration. I recognize the "liberal federal policy favoring arbitration" and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, in this case, another court will be deciding the arbitrability issue; therefore, I have not satisfied myself that the case is referable to arbitration, as is required under § 3.

■ In any event, under the principle of comity, I can stay the proceedings in this case in order to promote the efficient use of judicial resources. *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952)(noting that when two cases presenting the same issues are pending in different federal district courts, it has long been held that a federal court has the power to stay its proceedings in order to promote the efficient use of judicial resources); *Roth v. Bank of Commonwealth,* 583 F.2d 527, 538 (6th Cir. 1978)(same). Accordingly, AFCA's and

Gray's motion for stay is granted pending the District Court for the Eastern District of North Carolina's decision regarding the motion to compel arbitration and possible arbitration.

### III. UMMG's and UICI's Motions to Stay

UMMG and UICI have also filed petitions to compel arbitration in the United States District Court for the Eastern District of North Carolina. Hence, they have moved for a stay of the proceedings in this court pending the decision and possible arbitration in North Carolina. UMMG and UICI argue that even though they are not signatories to an arbitration agreement with Plaintiff, they are nevertheless entitled to participate in any arbitration proceeding.

In Plaintiff's *Complaint,* UMMG and UICI are grouped with AFCA, Gray, and UCNB as "the AFCA Defendants." The *Complaint* asserts that the Defendants, including UMMG and UICI "were the agents, joint venturers, partners or representatives of each other." *Complaint* ¶ 14. Additionally, Plaintiff seeks to have UMMG and UICI held jointly and severally liable (along with other Defendants) for the alleged breach of the AFCA Agreement. Therefore, UMMG and UICI are seeking to compel arbitration under the AFCA Arbitration Agreement, which specifies that arbitration should take place in North Carolina.

■ Under Tenth Circuit law, a nonsignatory to an arbitration agreement can be compelled to arbitrate if the nonsignatory is the alter ego of the signatory. *See ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1460–61 (10th Cir.1995). I assume that an alter ego of the signatory would also be able to compel arbitration under the agreement. In addition, the "Second Circuit and other circuits 'have

been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *Norcom Elecs. Corp. v. CIM USA Inc.*, 104 F.Supp.2d 198, 203 (S.D.N.Y.2000) (quoting *Smith/Enron Cogeneration Ltd. Pshp. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97–98 (2d Cir.1999)); *see also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417–18 (4th Cir.2000)("[W]hen allegations against 'a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.'") (citation omitted); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir.1993)(same).

 Here, Plaintiff alleges that UMMG and UICI were the "agents, joint venturers, partners or representatives" of the other Defendants. In essence, this is an allegation that UMMG and UICI were alter egos of AFCA. Therefore, if they are sued in their capacity as alter egos of AFCA, they have the right to proceed under the AFCA Arbitration Agreement. Alternatively, the issues in the claims against UMMG and UICI are inextricably intertwined with those against AFCA. Even if UMMG and UICI are not sued as the alter egos of AFCA, the claims against them are based on the same factual allegations, and even the same contract, as the claims against AFCA. Accordingly, UMMG and UICI may attempt to compel arbitration pursuant to the AFCA Arbitration Agreement, even though they were not signatories to the Agreement.

For the reasons stated above, because the AFCA Arbitration Agreement included a forum selection clause, and based on § 4 of the FAA, the United States District Court for the Eastern District of North Carolina must decide whether Plaintiff's claims are subject to arbitration. Accordingly, I grant UMMG's and UICI's motions to stay the proceedings here, pending a decision and possible arbitration in North Carolina.

## IV. Household Defendants' Motion to Compel and Motion to Stay

The Household Defendants move to compel arbitration in Colorado or, in the alternative, to stay this action and allow them to file a petition to compel arbitration in Plaintiff's home state of North Carolina. The Household Arbitration Agreement informs cardholders that "[a]ny participatory arbitration hearing that you attend will take place in the city nearest to your residence where a federal district court is located or at such other location as agreed by the parties." *See Plaintiff's Response to Household's Motion to Compel at Exhibit D.* Household argues that by instituting suit in Colorado, Plaintiff has elected to resolve his dispute in this District and has, therefore, waived his right under the Household Arbitration Agreement to demand arbitration in North Carolina.

Plaintiff agrees with Household that this court should decide the arbitrability issue. Additionally, Plaintiff does not contest the location of any future arbitration, but instead argues that his claims are not subject to arbitration at all.

Even though it would be more efficient to summarily force Household to seek arbitration in North Carolina, simply because that is where the other Defendants' motions to compel arbitration will be decided, an independent analysis of Household's rights under its arbitration agreement is required. *See Champ v. Siegel Trading Co.*, 55 F.3d 269, 277 (7th Cir. 1995) (noting that the Supreme Court "has

repeatedly emphasized that we must rigorously enforce the parties' agreement as they wrote it, even if the result is 'piecemeal' litigation"); *American Centennial Ins. Co. v. National Cas. Co.*, 951 F.2d 107, 108 (6th Cir.1991)(holding that a court is not permitted to interfere with private arbitration agreements in order to impose its own view of speed and economy, even where the result would be the inefficient maintenance of separate proceedings); *Baesler v. Continental Grain Co.*, 900 F.2d 1193, 1195 (8th Cir.1990)(holding that the Supreme Court "has explicitly rejected the assertion that the overriding goal of the [FAA] is to promote the expeditious resolution of claims").

Household cites *Continental Grain Co. v. Dant & Russell*, 118 F.2d 967 (9th Cir. 1941), in support of its argument that Plaintiff has waived the right to have arbitration in North Carolina. In *Continental Grain*, a plaintiff sued in Oregon to enforce an arbitration agreement, which specified New York as the location for arbitration. The court held that the plaintiff waived his right to hold arbitration in New York and, instead, ordered arbitration to proceed in Oregon. *Id.*

Here, the procedural posture is different than that in *Continental Grain*. Plaintiff did not file suit in this court seeking to enforce the arbitration agreement; instead, he filed suit in this court and argues that he is not subject to arbitration at all. The issue is whether Plaintiff's Response to Household's motion, where he concedes that this court should decide the arbitrability issue and does not specifically object to the location where Household is trying to compel arbitration, constitutes a waiver of Plaintiff's right to arbitrate in North Carolina.

There is no Tenth Circuit case dealing with a party waiving his right to arbitrate in a specific location. However, the Tenth Circuit has summarized factors to be considered in determining whether a party has waived his right to arbitration in general. Those factors are:

(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir.1994)(alterations in original)(quoting *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 467–68 (10th Cir.1988)). I believe these factors are illustrative of those the Tenth Circuit would consider in determining whether a party has waived his right to arbitrate in a specific location, i.e., whether the party's actions are inconsistent with the right to arbitrate in the contractually specified location and the stage of the proceedings.

■ Based on these factors, I conclude that if Plaintiff's claims are subject to the AFCA Arbitration Agreement, he has not waived his right to arbitrate in North Carolina. Plaintiff's actions were not inconsistent with the right to arbitrate in North Carolina, if arbitration is required. Plaintiff has simply argued that his claims are not subject to arbitration. He has not waived any of his rights under the Arbitration Agreement if it is determined that his

claims are arbitrable. Additionally, this case is at an early stage. Defendants have not yet responded to the *Complaint* and arbitration has not begun. Accordingly, if arbitration is required, Plaintiff has a right under the Household Arbitration Agreement to have the arbitration take place in North Carolina. Therefore, as discussed above, I lack the power to compel arbitration in this case.

Based on the same concerns for comity and judicial efficiency as discussed above, I grant Household's motion to stay these proceedings pending the District Court for the Eastern District of North Carolina's decision and possible arbitration.

## V. Plaintiff's Motion for Expedited Discovery on Limited Issue of Arbitrability Directed to AFCA and Household Defendants

Plaintiff has filed separate motions for expedited discovery on the limited issue of arbitrability directed to the AFCA and Household Defendants. Because I have decided that the District Court for the Eastern District of North Carolina must decide the issue of arbitrability, any motions relating to discovery on the limited issue of arbitrability should be addressed to that court.

Accordingly, it is **ORDERED** that:

1. AFCA's and Gray's motion to stay these proceedings is **GRANTED**;

2. UMMG's motion to stay these proceedings is **GRANTED**;

3. UICI's motion to stay these proceedings is **GRANTED**;

4. Household's motion to compel arbitration is **DENIED** without prejudice;

5. Household's motion to stay these proceedings is **GRANTED**; and

6. Plaintiff's motions for expedited discovery on the limited issue of arbitrability directed to the AFCA and Household

Defendants are **DENIED** without prejudice.